UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| EMMA COLLINS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )     No. 1:17-cv-01549-SEB-TAB |
| | ) |
| NANCY A. BERRYHILL, Acting Commissioner | ) |
| of Social Security, | ) |
| | ) |
| Defendant. | ) |

## ORDER

Plaintiff Emma Collins applied for disability insurance benefits ("DIB") and/or supplemental security income ("SSI") from the Social Security Administration ("SSA") on June 5, 2014, alleging a disability onset date of June 2, 2012. [Filing No. 17-5 at 8.] Her application was initially denied on September 10, 2014, [Filing No. 17-4 at 8], and reaffirmed upon reconsideration on November 14, 2014, [Filing No. 17-4 at 31]. The ALJ conducted a hearing on July 19, 2016, [Filing No. 17-2 at 30-63], resulting in a decision on November 23, 2016 that Ms. Collins was not entitled to receive DIB or SSI, [Filing No. 17-2 at 10]. The Appeals Council denied review on March 6, 2017. [Filing No. 17-2 at 2.] On May 10, 2017, Ms. Collins timely filed this action seeking judicial review of the denial of benefits, pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c). [Filing No. 1.] For the reasons detailed below, the decision of the ALJ is REVERSED and the case REMANDED for action consistent with this order.

## I.
### STANDARD OF REVIEW

"The Social Security Act authorizes payment of disability insurance benefits … to individuals with disabilities." *Barnhart v. Walton*, 535 U.S. 212, 214 (2002). "The statutory

definition of 'disability' has two parts. First, it requires a certain kind of inability, namely, an inability to engage in any substantial gainful activity. Second, it requires an impairment, namely, a physical or mental impairment, which provides reason for the inability. The statute adds that the impairment must be one that has lasted or can be expected to last … not less than 12 months." *Id*. at 217.

When an applicant appeals an adverse decision, the Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citation omitted). For the purpose of judicial review, "[s]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (quotation omitted). Because the ALJ "is in the best position to determine the credibility of witnesses," *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008), the Court must afford the ALJ's credibility determination "considerable deference," overturning it only if it is "patently wrong." *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (quotations omitted).

The ALJ is required to apply the five-step inquiry in sequence set forth in 20 C.F.R. § 404.1520(a)(4)(i)-(v), to determine:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform her past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000) (citations omitted) (alterations in original).[1]

"If a claimant satisfies steps one, two, and three, she will automatically be found disabled. If a

---

[1] In general, the legal standards applied in the determination of disability are the same regardless of whether a claimant seeks DIB or SSI. However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, the citations in this opinion refer to the appropriate parallel

claimant satisfies steps one and two, but not three, then she must satisfy step four. Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

After Step Three, but before Step Four, the ALJ must determine a claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). In doing so, the ALJ "may not dismiss a line of evidence contrary to the ruling." *Id.* The ALJ uses the RFC at Step Four to determine whether the claimant can perform her own past relevant work and if not, at Step Five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 404.1520(iv), (v). The burden of proof is on the claimant for Steps One through Four; only at Step Five does the burden shift to the Commissioner. *See Clifford*, 227 F.3d at 868.

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Barnett*, 381 F.3d at 668. When an ALJ's decision is not supported by substantial evidence, a remand for further proceedings is typically the appropriate remedy. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005). An award of benefits "is appropriate where all factual issues have been resolved and the record can yield but one supportable conclusion." *Id.* (citation omitted).

---

provisions as context dictates. The same applies to citations of statutes or regulations found in quoted court decisions.

**II.**

**B**ACKGROUND

Ms. Collins, Plaintiff herein, was 55 years of age at the time she applied for DIB and/or SSI. [Filing No. 17-5 at 8.] She has completed 10 years of high school, [Filing No. 17-2 at 32], and previously worked as an inserter and an attendant at a coin operated laundry. [Filing No. 17-2 at 55.][2]

The ALJ followed the five-step sequential evaluation set forth by the Social Security Administration in 20 C.F.R. § 404.1520(a)(4), ultimately concluding that Ms. Collins is not disabled. [Filing No. 17-2 at 22.] The ALJ found as follows:

- At Step One, the ALJ found that Ms. Collins has not engaged in substantial gainful activity[3] since June 2, 2012, the alleged onset date. [Filing No. 17-2 at 15.]

- At Step Two, the ALJ found that Ms. Collins has the following severe impairments: degenerative disk disease in the cervical, lumbar, and thoracic spine; degenerative joint disease of the left knee; obesity, anxiety, and depression. [Filing No. 17-2 at 15-16.]

- At Step Three, the ALJ found that Ms. Collins does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. [Filing No. 17-2 at 16.]

- After Step Three but before Step Four, the ALJ found that Ms. Collins has the RFC to "perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except: She is able to lift, carry, push or pull up to twenty pounds occasionally and up to ten pounds frequently. She is able to sit for six hours in an eight-hour workday, stand for six hours or walk for six hours with normal work breaks. She is not able to climb ladders, ropes, or scaffolds, but she is able to climb stairs or ramps occasionally. She is able to kneel, crouch, or crawl

---

[2] Both parties provided a detailed description of Ms. Collins's medical history and treatment in their briefs. [Filing No. 22; Filing No. 29.] Because that discussion implicates sensitive and otherwise confidential medical information concerning Ms. Collins, we will simply incorporate those facts by reference and detail specific facts only as necessary to address the parties' arguments.

[3] Substantial gainful activity is defined as work activity that is both substantial (*i.e.*, involves significant physical or mental activities) and gainful (*i.e.*, work that is usually done for pay or profit, whether or not a profit is realized). 20 C.F.R. § 404.1572(a).

occasionally. She is able to understand, remember and carry out simple, routine instruction and tasks and to make simple work-related decisions. She is limited to work that involves no more than occasional interaction with the public." [Filing No. 17-2 at 19 (footnote omitted).]

- At Step Four, the ALJ concluded, after considering Ms. Collins's age, education, work experience, and RFC and relying on the testimony of the vocational expert ("VE"), that Ms. Collins is capable of performing her past relevant work as an inserter. [Filing No. 17-2 at 22.]

### III.
### DISCUSSION

Ms. Collins advances several claims of error regarding the ALJ's decision. However, we shall focus our analysis on the error that we have concluded requires remand.

**A. The ALJ's RFC Finding and Resulting Hypothetical Posed to the VE Failed to Incorporate All of the Limitations Supported by the Record.**

Ms. Collins notes that the ALJ found that she had moderate limitations of concentration, persistence, and pace, but failed to adequately account for these limitations in her RFC finding (or in hypothetical questions posed to the VE). [Filing No. 22 at 31-32.] In support, Ms. Collins relies on the Seventh Circuit precedent in *Varga*. [Filing No. 22 at 32-33.]

The Commissioner asserts that Ms. Collins mistakenly interprets *Varga* to hold that an RFC limitation to "simple, routine tasks" is *per se* unreasonable by its failure to accommodate moderate limitations of concentration, persistence, and pace. [Filing No. 29 at 13.] In making this argument, the Commissioner relies on the nonprecedential decision of the Seventh Circuit in *Capman* that held that an RFC of simple, routine tasks can adequately address moderate limitations of concentration, persistence, and pace when the RFC "accurately reflect[s] the reliable narrative opinion of a state-agency psychologist." *Id.* The Commissioner describes this case as "virtually identical to *Capman*." [Filing No. 29 at 14.]

The general rule is simple enough. Regardless of the basis, a hypothetical question put by the ALJ to the VE "must fully set forth the claimant's impairments to the extent that they are supported by the medical evidence in the record." *Herron v. Shalala*, 19 F.3d 329, 337 (7th Cir. 1994); *Indoranto v. Barnhart,* 374 F.3d 470, 473-74 (7th Cir.2004) ("If the ALJ relies on testimony from a vocational expert, the hypothetical question [she] poses to the VE must incorporate all of the claimant's limitations supported by medical evidence in the record."); *see also* SSR 96–5p, 1996 WL 374183, at \*5 (RFC assessment "is based upon consideration of all relevant evidence in the case record, including medical evidence and relevant nonmedical evidence"); 20 C.F.R. § 404.1545. "Among the mental limitations that the VE must consider are deficiencies of concentration, persistence, or pace." *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015) (citing *Yurt v. Colvin,* 758 F.3d 850, 857 (7th Cir. 2014); *Stewart v. Astrue,* 561 F.3d 679, 684 (7th Cir.2009)). "Although it is not necessary that the ALJ use the precise terminology of 'concentration,' 'persistence,' or 'pace,' we will not assume that a VE is apprised of such limitations unless he or she has independently reviewed the medical record." *Id.* at 814 (citing *Yurt,* 758 F.3d at 857).[4]

Without any further elaboration as to the supporting evidence of record in assessing the "paragraph B" criteria, the ALJ found that "[t]he State agency mental health professionals opined that the claimant had moderate difficulty with concentration, persistence and pace (Ex. 6A, page 7). I concur with that assessment."[5] [Filing No. 17-2 at 18.] The identical assessments of the two

---

[4] There is no evidence in this case that the VE independently reviewed the medical record or was otherwise oriented to the full limitations supported by the record, beyond what was conveyed in hypothetical questioning from the ALJ and Ms. Collins's representative.

[5] The limitations identified in the "paragraph B" criteria are used to rate the severity of mental impairments at Step Two and Step Three of the sequential evaluation process. 20 C.F.R. § 404.1520a(d)-(e). Ms. Collins does not challenge the ALJ's paragraph B findings. However, the

state agency reviewing psychologists arrived at the paragraph B criteria finding by assessing the level of limitation in more specific functional areas. They found moderate limitations in four specific areas with regard to Ms. Collins's ability to: understand and remember detailed instructions, carry out detailed instructions, complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, and accept instructions and respond appropriately to criticism from supervisors. [Filing No. 17-3 at 10-11; Filing No. 17-3 at 37-38.] After rating the level of impairment in each functional area, both psychologists' opinions referenced a single narrative, which is also identical, addressing the cumulative capacities or limitations as follows: "evidence suggests that claimant can understand, remember, and carry-out semi-skilled tasks. The claimant can relate on an ongoing basis with co-workers and supervisors. The claimant can attend to task[s] for sufficient periods of time to complete tasks. The claimant can manage the stresses involved with semi-skilled work." [Filing No. 17-3 at 12; Filing No. 17-3 at 39.] The ALJ determined that the record supported a greater level of limitation than the reviewing opinions with social functioning (moderate, as opposed to mild). [Filing No. 17-2 at 18.] The ALJ incorporated these paragraph B findings into her RFC finding and in the hypotheticals provided to the VE, to wit: that Ms. Collins "is able to understand, remember and carry out simple, routine instruction and tasks and to make simple work-related decisions. She is limited to work that involves no more than occasional interaction with the public." [Filing No. 17-2 at 19.]

---

RFC assessment used at Step Four and Step Five requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraph B of the adult mental disorder listings. SSR 96-8p. Ms. Collins challenges the ALJ's RFC finding based on an alleged failure to itemize her more detailed functional restrictions.

The Seventh Circuit has repeatedly expressed its concerns with imputing moderate limitations of concentration, persistence, and pace into limitations as to the skill level demands of a job. "In most cases, however, employing terms like 'simple, repetitive tasks' on their own will not necessarily exclude from the VE's consideration those positions that present significant problems of concentration, persistence and pace." *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 620 (7th Cir. 2010) (citing *Stewart*, 561 F.3d at 684-85 (limiting hypothetical to simple, routine tasks did not account for limitations of concentration, persistence, and pace); *see also Craft*, 539 F.3d at 677-78 (restricting hypothetical to unskilled work did not consider difficulties with memory, concentration or mood swings)). "The ability to stick with a given task over a sustained period is not the same as the ability to learn how to do tasks of a given complexity." *O'Connor-Spinner*, 627 F.3d at 620 (citing *Stewart*, 561 F.3d at 684-85; *Craft*, 539 F.3d at 677; *see also* Social Security Ruling 85-15 (1985) ("Because response to the demands of work is highly individualized, the skill level of a position is not necessarily related to the difficulty an individual will have in meeting the demands of the job. A claimant's [mental] condition may make performance of an unskilled job as difficult as an objectively more demanding job.")). "[W]e have repeatedly rejected the notion that a hypothetical like the one here confining the claimant to simple, routine tasks and limited interactions with others adequately captures temperamental deficiencies and limitations in concentration, persistence, and pace." *Yurt*, 758 F.3d at 858-59.

We concede that Seventh Circuit precedent has not imposed a *per se* rule that a mental RFC for simple, routine tasks can never reasonably accommodate moderate limitations of concentration, persistence, and pace. However, the Seventh Circuit hasn't created a *per se* rule allowing an ALJ always to rely on the narrative portion of a reviewing opinion in making this determination. "This circuit has declined to adopt a blanket rule that checked boxes in Section I

of the MRFCA form indicating moderate difficulties in mental functioning need not be incorporated into a hypothetical to the VE. In fact, in *Yurt,* we explicitly rejected the argument that 'we should be unconcerned ... with the failure of the ALJ to mention the six areas where [the state psychologist] found moderate limitations because the narrative portion of the form adequately translated these limitations into a mental RFC that the ALJ could reasonably adopt.'" *Varga*, 794 F.3d at 816 (citing *Yurt,* 758 F.3d at 858).

The Commissioner's reading of *Capman* is thus too narrow, given the Seventh Circuit's directive in that opinion that **"**the ALJ may reasonably rely on the examiner's narrative in Section III, *at least where it is not inconsistent* with the findings in the Section I worksheet." *Capman v. Colvin*, 617 Fed.Appx. 575, 579 (7th Cir. 2015) [emphasis added]. The Court further explained: "[T]he ALJ's RFC findings accurately reflected [the reviewing psychologist's] assessment by restricting Capman to simple, routine tasks and limited interactions with others. Both the medical evidence and Capman's testimony support the finding that any limitations in concentration, persistence, and pace stem from Capman's anxiety attacks, which occur when he is around other people. Therefore, the limitations incorporated into the ALJ's RFC findings adequately addressed Capman's deficiencies in concentration, persistence, and pace." *Id.* (citing *O'Connor–Spinner,* 627 F.3d at 619 (7th Cir.2010) ("We also have let stand an ALJ's hypothetical omitting the terms 'concentration, persistence and pace[,]' when it was manifest that the ALJ's alternative phrasing specifically excluded those tasks that someone with the claimant's limitations would be unable to perform."); *See also Johansen v. Barnhart,* 314 F.3d 283, 288-89 (7th Cir. 2002) (concluding that substantial evidence supported the denial of disability benefits where the ALJ's mental RFC assessment and hypothetical to the VE failed to explicitly note the three areas referenced by one consultative physician that the claimant was "moderately limited")). The Seventh Circuit

explained in *Yurt*: "[W]e allowed the hypothetical in *Johansen* to stand despite its omissions because its description of 'repetitive, low-stress work' specifically excluded positions likely to trigger the panic disorder that formed the basis of the claimant's limitations in concentration, persistence, and pace." *Yurt,* 758 F.3d at 858 (citing *O'Connor–Spinner,* 627 F.3d at 619 (collecting and distinguishing cases, including *Johansen,* upholding hypotheticals that omitted restrictions in "concentration, persistence, and pace")).

We do not share the Commissioner's view that the facts of the case before us make it indistinguishable from *Capman* (or *Johansen*). Ms. Collins testified to problems she has with concentration, task completion and memory, giving examples from her behaviors at home, as opposed to those triggered by crowds or in public places. [Filing No. 17-2 at 50.] Contrary to the ALJ's repeated assertions that the medical evidence showed Ms. Collins's memory to be intact, [Filing 17-2 at 17 and 21], mental status examinations consistently found her recent memory impaired, [Filing No. 17-13 at 80 (June 9, 2014); Filing No. 17-14 at 14 (October 22, 2014); Filing No. 17-16 at 3 (January 22, 2015); Filing No. 17-18 at 8 (June 26, 2015).]

We view this case as being highly similar to the relevant facts of *Yurt* (finding the narrative limitations to inadequately capture the full limitations of record), which involved issues with concentration and memory stemming not only from anxiety, but from psychotic features with obsessive compulsive tendencies and the close alignment among the specific functional limitations. *See Yurt*, 758 F.3d at 852, 854 and 855 (narrative rejected despite explicitly stating, within the context of the skill level, the ability to "attend to tasks for sufficient periods of time to complete," as noted in the instant narrative); *see also* [Filing No. 17-2 at 17 (noting diagnosis of major depressive disorder with psychotic features, obsessive-compulsive symptoms, and chronically dysphoric mood)]. Here, the ALJ's RFC does not adequately account for Ms. Collins's

moderate limitations in her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.

The Commissioner's rationale that the ALJ adequately accounted for limitations to pace by "generously limiting" Ms. Collins to "even simpler work than opined by the state agency psychologists" invokes the oft expressed criticisms by the Seventh Circuit. Simply put, the skill level of a job does not necessarily equate to the pace requirements of the job, and a psychologist is not qualified to determine that by limiting a particular job capacity to a semi-skilled level it would automatically limit the pace requirements. An ALJ similarly is not qualified to determine that by limiting the job to unskilled work it would adequately limit the pace requirements. The analytical deficiencies underlying the final determination in the case before us for review are revealed in the testimony of the VE, who is qualified to make the required determination. When asked how much "time off task" would be tolerated in the particular job Ms. Collins was found capable of performing (her past relevant work as an inserter), the VE testified as follows:

> Well, again it is, it's, it's a production type job, you know, that -- and, and if she's not meeting the, the production schedules or on time or have to slow this -- the line down because keeping pace or have to be away from the work site, you know, then I think that that -- again, any, any more than five percent would be not, not, not tolerable. Normally my, my, my time off task is ten percent, but in this particular job, you know, I think the type of work she was doing would be not much time to be not doing her work, particularly at an unskilled SVP: 1 job.

[Filing No. 17-2 at 60.] The VE's testimony properly explicates how the demands of pace and remaining on task do not directly or necessarily correlate with the skill level of the job. In fact, the VE further testified that with this particular job, the reduced skill level actually allows less tolerance for interruptions of pace or remaining on task. The ALJ's failure to account for limitations of pace by simply lowering the skill level and interaction in her RFC and resulting

hypotheticals provided to the VE requires remand for further proceedings. *See Varga*, 794 F.3d at 812 (the additional limitation to simple decisions does not affect the analysis).

The ALJ's error is of particular significance to the ultimate outcome of Ms. Collins's disability claim. The ALJ denied her claim at Step Four after finding she could return to her past work as an inserter, despite VE testimony that suggests that even a modest limitation of no production pace work or providing for time off task would preclude such work. If Ms. Collins were found to be unable to perform her past relevant work, based on a modified light exertional capacity and the "Medical-Vocational Guidelines," she would qualify for disability, at least for the period of time after reaching advanced age (beginning at age 55). *See* 20 C.F.R Pt. 404, Subpt. P, App. 2, Table No. 2, Rule 202.04.

## B. Other Assignments of Error

Having determined that a remand for further proceedings is required for the reasons explicated above, we need not address Ms. Collins's remaining assignments of error. We assume on remand that careful attention will be paid to any newly submitted evidence, particularly if such new evidence materially conflicts with the prior decisions, perhaps by seeking further expert review. *See Stage v. Colvin,* 812 F.3d 1121, 1125 (7th Cir. 2016); *see also Goins v. Colvin*, 764 F.3d 677, 680 (7th Cir. 2014). We note that the consulting opinions addressed only the first eight of the twenty-four medical exhibits in the "F" section and that a light RFC was appropriately based on, "2/2013 steady gait" and "7/2014 negative SLR, normal motor & sensory BLE." [Filing No. 17-3 at 9; Filing No. 17-3 at 36.] Subsequent evidence submitted following those reviews included additional diagnostic imaging as well as contradictory examination findings reflecting antalgic gait, diminished sensation, and decreased reflexes. *See* [Filing No. 17-17 at 86-87; Filing No. 17-

17 at 92-94.] On remand, the Commissioner may be well advised to submit the medical record to additional review by the expert analysts.

We have not opined as to whether the ALJ's assessment of Ms. Collins's alleged symptoms passes deferential review. However, given the discussion above, further review of the evidence of her reduced recent memory may be warranted.

## IV.
### CONCLUSION

For the reasons detailed herein, the Court **REVERSES** the ALJ's decision denying Ms. Collins's benefits and **REMANDS** this matter for further proceedings pursuant to 42 U.S.C. § 405(g) (sentence 4) as detailed above. Final Judgment will issue accordingly.

Date: _____3/12/2018_____          _Sarah Evans Barker_____

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana


Distribution:

Jill Z. Julian
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
jill.julian@usdoj.gov

Nicholas Thomas Lavella
KELLER & KELLER
nlavella@2keller.com

Matthew Frederick Richter
KELLER & KELLER LLP
mrichter@2keller.com

Eric Harris Schepard
SOCIAL SECURITY ADMINISTRATION
eric.schepard@ssa.gov

Joseph R. Wambach
KELLER & KELLER
joew@2keller.com